UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NATHANIEL BEARD, 02-B-1362

                    Petitioner,

          -v-                                    06-CV-0405(MAT)
                                                 **ORDER**
DAVID UNGER, Superintendent of
Orleans Correctional Facility

                    Respondent.

_____

## I.    Introduction

Petitioner Nathaniel Beard ("petitioner") filed this *pro se*
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging his conviction upon a jury verdict in Wayne County
Court on multiple counts of Rape in the Second Degree (N.Y. Penal
Law ("P.L.") § 130.30[1]), Sodomy in the Second Degree (P.L.
§ 130.45[1]), Rape in the Third Degree (P.L. § 130.25[2]), and
Sodomy in the Third Degree (P.L. § 130.40[2]). Petitioner was
sentenced as a second felony offender to aggregate, indeterminate
terms of imprisonment of fifteen to thirty years.[1]

## II.   Factual Background and Procedural History

### A.    The Trial

Petitioner's conviction arises out of a series of sexual
encounters with three underage females (ages 13, 14 and 16) when

_____

[1] According to the Wayne County District Attorney's Office, petitioner's
sentence was reduced by the N.Y. Department of Corrections pursuant to
statute. Petitioner's current sentence is ten to twenty years. See Ex. I.

petitioner was 32 years-old. Following a jury trial before Judge John Nesbitt, petitioner was found guilty of the charges relating to two of the girls, and acquitted of the single charge related to the third. There was no proof that any of the acts committed were the result of force. The three girls testified at trial to multiple acts of sexual intercourse and oral sex with petitioner at various times. The age of the victims was established through birth certificates and testimony by the girls' parents. Petitioner did not testify, nor did he present any witnesses at trial.

Petitioner was sentenced as a second felony offender to aggregate, indeterminate terms from fifteen to thirty years. Sentencing Tr. 21-25. For the reasons that follow, the Court finds that petitioner is not entitled to habeas relief.

### B. Direct Appeal

On direct appeal, petitioner raised the following points through counsel: (1) that the jury's verdict was against the weight of the evidence; (2) prosecutorial misconduct; and (3) harsh and excessive sentence. See Petitioner's Appellate Brief ("App. Br."); Respondent's ("Resp't") Ex. A. He also filed a *pro se* supplemental brief which was considered by the Appellate Division. See Resp't Ex. C. The Appellate Division, Fourth Department, unanimously affirmed petitioner's conviction. People v. Beard, 1 A.D.3d 1052 (4th Dept. 2003); lv. denied 1 N.Y.3d 624 (2004).

### C.    Post-Conviction Relief

On March 11, 2004, petitioner moved the trial court to vacate his conviction pursuant to New York Crim. Proc. Law ("C.P.L.") § 440.10 on the grounds that: (1) the prosecutor adduced false evidence at trial; (2) the jury was not impartial; (3) petitioner's right to cross-examine witnesses was unlawfully curtailed; (4) Eighth Amendment violations; and (5) ineffective assistance of trial counsel. See Ex. H. The state court denied that motion, and leave to appeal the denial was denied by the Fourth Department on March 23, 2005. See Ex. K-N.

Petitioner filed his second motion for *vacatur* on September 18, 2005, alleging that trial counsel was ineffective for failing to adequately investigate his case. He enclosed an affidavit from James Wright ("Wright"), a mutual friend of the victim and petitioner who allegedly introduced the two. In the affidavit, Wright stated that he had never been in the same location with petitioner and the victim together. The county court again denied petitioner's motion, and leave to appeal was denied by the Fourth Department on May 4, 2006. See Ex. O-U.

Petitioner filed his third § 440 motion based on newly-discovered evidence, enclosing the same affidavit from Wright that was introduced in petitioner's previous motion to vacate. See Mot., No. 01-134 dated 8/14/08.

A fourth motion alleged ineffective assistance of trial counsel and a Brady violation by the prosecution. See Mot., No. 01-134 dated 11/14/08. Both of those motions were denied. See Memorandum-Decision No. 01-134 dated 1/5/09, Memorandum-Decision dated 4/3/09. The Fourth Department denied leave to appeal as to both motions. See Order, KA 09-00779, dated 11/30/09; Order, KA 09-01254, dated 12/7/09.

**D.    Petition for Habeas Corpus**

Petitioner filed a timely petition for writ of habeas corpus before this Court, raising four grounds for relief (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) the trial court improperly limited the scope of cross-examination; and (4) selective prosecution. (Dkt. #1).

**1.    Motion to Stay**

On November 20, 2008, petitioner filed a letter requesting that the petition be stayed and held in abeyance. (Dkt. #15). The Court denied petitioner's motion without prejudice upon a proper showing pursuant to Rhines v. Weber, 544 U.S. 269, 277-78 (2005).[2] On February 20, 2009, petitioner filed a "Renewed Motion for Stay

---

[2] Where a habeas petitioner has filed a "mixed petition," that is a petition containing both exhausted and unexhausted claims, the Supreme Court has held that a district court has the discretion to stay consideration of the exhausted claims while the petitioner exhausts his remedies with respect to the unexhausted claims. Rhines, 544 U.S. at 269, 277-78. Under Rhines, such a stay is appropriate if (1) the unexhausted claims are not meritless, (2) the petitioner has good cause for failing to exhaust his claims in state court and (3) the petitioner has not engaged in intentional delay or abusive litigation tactics.

and Abeyance", which included a second petition with two additional claims he sought to exhaust in state court.  (Dkt. #17). The Court shall construe this as a motion to stay the petition and leave to amend the original petition.  Because petitioner has exhausted his two additional claims in Wayne County Court, that portion of the motion seeking a stay (Dkt. #17) is denied.

With respect to the motion to amend, "[i]t is well-established that a district court should normally permit amendment absent futility, undue delay, bad faith or dilatory motive, or undue prejudice." Masotto v. United States, 205 F.3d 1323 (Table), No. 97-2894, 2000 WL 19096, at *2 (2d Cir. 2000) (citing Forman v. Davis, 371 U.S. 178, 182 (1962); Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 28 (2d Cir. 1995) (per curiam). To the extent that petitioner seeks to raise a claim of newly discovered evidence that establishes petitioner's innocence, the Court finds that amending the petition to include this claim would be futile under the Supreme Court's holding in Herrera v. Collins, 506 U.S. 391 (1993) (holding that a claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief.). Similarly, petitioner's proposed Brady claim lacks merit, and leave to amend the petition to include this claim is also denied.[3] See

_____

[3] The Wayne County Court determined that because petitioner had and knew of the information prior to trial, the evidence did not constitute Brady material. See Memorandum - Decision, No. 01-134, dated 4/3/2009.

-5-

Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (where there is no merit to a proposed amendment, leave to amend should be denied).

The Court will proceed to the merits of petitioner's four claims set forth in the original petition. (Dkt. #1).

## III. Discussion

### A.    Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.    See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

### B.    Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been

'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

### C.    Merits of the Petition

#### 1.    Ineffective Assistance of Trial Counsel

Petitioner contends that he was deprived of his right to the effective assistance of counsel for a plethora of reasons, including, *inter alia*, that his attorney, Dudley Bertram, Esq., failed to: (1) challenge a juror for cause; (2) effectively cross-examine prosecution witnesses; and (3) introduce a victim's personal planner/calendar into evidence. Pet. ¶ 22(A), Petitioner's ("Pet'r") Mem. 1-5. (Dkt. #1). Petitioner raised these claims and others relating to ineffective assistance of trial counsel on direct appeal through a supplemental *pro se* brief and in three § 440 motions in Wayne County Court. All of the claims were denied on both procedural and substantive grounds. In the interest of judicial economy, the Court will proceed to the merits of petitioner's most salient claims in light of any existing procedural default.

The Supreme Court has recognized that the Sixth Amendment's guarantee of "the right to counsel is the right to the effective assistance of counsel." <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (setting forth the "clearly established" legal principles applicable to claims alleging ineffective assistance of counsel

under the Sixth Amendment) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771, n. 14 (1970)). To fulfill <u>Strickland</u> 's rigorous two-prong standard, the petitioner first "must show that counsel's representation fell below an objective standard of reasonableness." The Supreme Court has explained that "[j]udicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. Second, the petitioner must show that counsel's performance "prejudiced" the petitioner. That is, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>

### a. Failure to Challenge a Juror for Cause

Petitioner first contends that counsel was ineffective for failing to exercise a for-cause challenge as to a juror that was a veteran employee of the Wayne County Sheriff's Department, who, according to petitioner, had "personal knowledge of the case." Pet. ¶ 22(A); <u>see also</u> Pro Se Appellate Br. at 9, Ex. B.

"Judicial scrutiny of counsel's performance must be highly deferential,." <u>Strickland</u>, 466 U.S. at 689, and "strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable[.]" Id. at 690; see also Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance.") (internal quotations omitted). An attorney's actions in conducting *voir dire* are afforded such deference. Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001); see also Ciaprazi v. Senkowski, 151 Fed.Appx. 62, 63-64 (2d Cir. 2005) (unpublished decision) (holding that trial counsel's decision not to seek an alternate juror is "paradigmatically strategic"). In order to establish that trial counsel was ineffective for failing to challenge a prospective juror on *voir dire*, actual bias must be established. See Murphy v. Florida, 421 U.S. 794, 800 (1975); Hughes, 258 F.3d at 458; accord Mitchell v. Herbert, 01-CV-681 (RJA)(VEB), 2008 WL 342975 at *21 (W.D.N.Y. Feb. 6, 2008); Torrez v. Sabourin, No. 00 CIV. 3286(AGS), 2001 WL 401444 at *7 ("Based on the lack of actual or presumed bias of the jurors, the petitioner has not demonstrated that he was prejudiced by his counsel's failure to strike these jurors and has, therefore, failed to establish ineffective assistance of counsel."). "Actual bias is 'bias in fact'-the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." U.S. v. Torres, 128 F.3d 38, 43 (2d Cir. 1997). Actual bias can be found where a prospective juror

admits partiality, or where the same can be inferred from his or her answers to *voir dire* questions. <u>Torres</u>, 128 F.3d at 43.

A review of the record does not support petitioner's claim that the juror was actually biased because he had personal knowledge of the case against petitioner. The relevant portion of the *voir dire* concerning the juror at issue is set forth below:

| | |
|---|---|
| Mr. Bertram: | Do any of you know each other? You have already told the judge you have, none of you have any prior knowledge of this case. |
| Juror: | Excuse me, may I just interject? I at present do not. I have been out of town for a little while and as this case proceeds, I may find that yes, in fact, I did have knowledge of it more so than I am thinking I have now, so-I don't want you to think I'm saying no. I don't have any knowledge of it and then later find that I did. |
| Mr. Bertram: | Perhaps I better ask you another couple of questions. |
| . . . | |
| Mr. Bertram: | Exactly what area are you employed in? |
| Juror: | I, I was part of the sheriff's department detective division for a number of years. I retired the full time position in '93, went to work for the Marine unit and their recreational unit, snowmobile patrol. So more distant association with the department now, but there are a lot of different things that I hear from time to time and don't necessarily put together. |

Mr. Bertram:    Alright. Thank you. . . . At least I'm
                able to determine what level of
                association you may or may not have had.

Trial Tr. ("Tr.") 159-160.

Although the juror had worked as a police officer, he maintained throughout *voir dire* that he would not consider himself any different than any other individual with respect to evaluating testimony. Tr. 157. He also expressed that he would find the defendant not guilty if he listened to the facts and could not determine what happened, or had reasonable doubt. Tr. 160. Finally, when asked whether his experience as a police officer would carry over into petitioner's trial, the juror responded, "Well sir, I would certainly like to be able to say that it wouldn't and I would certainly do my best to see that it did not." Tr. 144.

In light of the above-quoted statements, the Court cannot find that petitioner has demonstrated that the juror was actually biased.[4] Even when a juror expressly doubts his or her impartiality on *voir dire*, a finding of actual bias is not necessarily compelled. Hughes, 258 F.3d at 458 ("The Supreme Court has upheld the impaneling of jurors who had doubted, or even disclaimed outright, their own impartiality on *voir dire*." )(citing Patton v. Yount, 467 U.S. 1025, 1029-30, 1032 (1984) (Holding that ambiguous and contradictory testimony of three jurors was insufficient to

_____

[4] Moreover, the mere fact that a juror is a member of a police force "is not presumptively a disqualification for service on a jury in a criminal trial." Mikus v. United States, 433 F.2d 719, 724 (2d Cir. 1970).

overcome presumption of correctness owed to trial court's findings that the jurors would be impartial.) Here, the juror never stated that he could not be fair or impartial, nor did he aver that he had personal knowledge of petitioner's case.  Tr. 133, 159-60.

Because petitioner cannot establish actual bias, Mr. Bertram's decision not to challenge the juror was within the realm of sound trial strategy. Strickland, 466 U.S. at 690; see also Mitchell, 2008 WL 342975 at *20 ("Without a finding that [the juror] was actually biased against petitioner, prejudice under Strickland is not presumed.").

### b.    Ineffective Cross-Examination

Petitioner alleges that his attorney failed to "use pretrial testimonies to impeach at trial" and that counsel was "not familiar and unprepared with the case." Pet. ¶ 22(A).

In general, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are...strategic in nature' and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). The "Constitution only guarantees an opportunity for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish." Harper v. Kelly, 916 F.2d 54, 57 (2d Cir. 1990).

At trial, the prosecution presented a case consisting of six witnesses. Mr. Bertram thoroughly cross-examined those witnesses, pointing out numerous inconsistencies in testimony and attempting to undermine the credibility of the witnesses. Tr. 247-48, 276-302, 321-22, 334-57, 360-64. Petitioner suggests that counsel should have capitalized on several minor inconsistencies between one witness's grand jury testimony and her trial testimony. Pet'r Mem. at 3-4. Even if counsel were to further cross-examine about trivial details, such as how many people were present at a house party when the victim and petitioner arrived, this testimony would not have changed the victim's previous consistent testimony that petitioner, on more than one occasion, engaged in sexual intercourse with her while knowing her age. Counsel was therefore not ineffective for failing to elicit inconsequential testimony. See Llanos v. Goord, 555 F.Supp.2d 454, 457-58 (S.D.N.Y. 2008).

With respect to the second part of petitioner's claim, the Court notes that counsel successfully argued to preclude prejudicial evidence that petitioner was involved with prostituting two of the victims to his friends–evidence that would have been extremely damaging. Tr. 16-21, 218-19. During summation, counsel raised the following arguments:(1) there was no medical evidence supporting the allegations of sexual intercourse; (2) the testimony of the three victims was at times conflicting; (3) that one victim testified falsely for fear of getting in trouble with her family;

(4) another victim had recanted her initial statement to police before trial and only testified under pressure from her lawyer; and (5) yet another victim was never interviewed by police. Indeed, the record indicates that Mr. Bertram was wholly familiar with the case, and made the appropriate motions and arguments at the proper times throughout trial. It is worth noting that trial counsel succeeded in convincing the jury to acquit petitioner on one charge of the indictment. Petitioner has thus not shown that Mr. Bertram's performance was objectively unreasonable as required by <u>Strickland</u>.

### c.    Failure to Introduce Victim's Calendar

Petitioner next claims that a calendar belonging to one of the victim's should have been introduced into evidence because it was relevant to her credibility and recollection. The calendar allegedly detailed her sexual activities with "[at] least twenty different men" for the month of June, 2001. Pet'r Mem. at 5. It is unlikely, however, that this item would have been admissible evidence, as New York's "rape shield law" generally prohibits evidence of a victim's sexual conduct in a prosecution for rape or sodomy.[5] Therefore, counsel's decision not to introduce potentially

---

[5] Codified at C.P.L. § 60.42. There are five exceptions contained in this blanket prohibition-four of which are narrowly defined exceptions that are inapplicable to the set of facts presented here. The fifth is an "interest of justice" provision which gives the trial court discretion to admit "relevant and admissible" evidence in the interests of justice. However, the victim's sexual activities with men other than petitioner is not relevant to the instant case.

inadmissible evidence constitutes a strategic choice that does not fall below an objective standard of reasonableness under Strickland.[6] See, e.g. Bennett v. Spitzer, No. 05-CV-1399, 2007 WL 389213 at *8 (E.D.N.Y. Jan. 31, 2007) (Counsel was not ineffective for failing to offer police reports that contained inadmissible hearsay); see generally U.S. v. Arena, 180 F.3d 380, 367-97 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

In sum, petitioner's aforesaid claims fail to meet the Strickland threshold, and the state courts' rejection of petitioner's various arguments relating to ineffective assistance of trial counsel were not unreasonable applications of, or contrary to Supreme Court precedent.

### 2. Prosecutorial Misconduct

#### a. Brady Violation

As part of his prosecutorial misconduct claim, petitioner contends that the prosecution did not provide him with the names and addresses of witnesses present at the scene of the crime, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Pet'r Mem. of Law at 9. In his supplemental *pro se* appellate brief, petitioner argued that this information constituted Brady material. See Ex.B at 46. In his second motion to vacate, he included an affidavit

---

[6] In any event, the document was not exculpatory, insomuch as petitioner's name was among the individuals listed on the calendar. See § 440 Mot., No. 01-134 dated 11/14/08 at Ex. 1.

from James Wright in which Wright denied witnessing sexual intercourse between petitioner and a victim. See Ex. O. Petitioner now argues that had he been able to contact Wright before trial, petitioner would have secured testimony from Wright indicating that Wright did not observe petitioner having sexual intercourse with the victim, contrary to the victim's testimony that Wright was present.

The Supreme Court in <u>Brady</u> held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment." 373 U.S. at 87. There are three elements to a <u>Brady</u> violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1995).

Here, there is nothing in the record to indicate that the prosecution suppressed Wright's address. Although petitioner asserts that "the prosecutor adamantly denied disclosure of the requested information," he does not substantiate this in his supplemental brief on appeal or in his petition and accompanying

memorandum. "As a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83  (1963), is not enough to establish that the government has, in fact, failed to honor its discovery obligations." <u>United States v. Upton</u>, 856 F.Supp. 727, 746 (E.D.N.Y. 1994) (citing <u>United States v. Driver</u>, 798 F.2d 248, 250 (7th Cir. 1986). Petitioner's bald assertion that the prosecution possessed additional information not disclosed in response to the defense's omnibus demands, do not, without more, establish the necessary elements of a <u>Brady</u> claim. <u>See, e.g.</u>, <u>United States v. Upton</u>, 856 F. Supp. at 746 (stating that mere speculation is insufficient to establish Brady violation); <u>United States v. Barrett</u>, 997 F.Supp. 312, 316 (N.D.N.Y. 1998) (finding that defendant's motion for a new trial was based on nothing more than "rank" and "unsupported speculation" by defendant that the government failed to disclose <u>Brady</u> material regarding a cooperating witness; given "governments' uncontradicted explanation for its actions" the district court found that "argument d[id] not rise to the level of a <u>Brady</u> violation, and thus, a new trial [wa]s not warranted"). As such, petitioner does not set forth a <u>Brady</u> violation to support his claim of prosecutorial misconduct.

### b.  Inflammatory Comments on Summation

Next, petitioner contends that the prosecutor made prejudicial remarks on summation, which entitles him to habeas relief. Pet. ¶

22(B), Pet'r Mem. at 11. The Appellate Division, Fourth Department dismissed petitioner's claim as meritless. <u>People v. Beard</u>, 1 A.D.3d 1052, 1053 (4th Dept. 2003).

To warrant granting a writ of habeas corpus, petitioner must demonstrate that the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986)(quotations omitted). With respect to prosecutorial misconduct during the course of delivering a closing argument, a petitioner must show "'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998) (quoting <u>Bentley v. Scully</u>, 41 F.3d 818, 824 (2d Cir. 1994)). A reviewing court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of defendant's conviction absent the prosecutor's objectionable remarks. <u>Bentley</u>, 41 F.3d at 824; <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990); <u>Brown v. Phillips</u>, No. CV-03-0361, 2006 WL 656973, at *7 (E.D.N.Y. Mar. 13, 2006) (citing <u>Tankleff</u> ); <u>see also</u> <u>Darden</u>, 477 U.S. at 181-83.

Here, petitioner objects to the prosecutor's use of the terms "child molester", "predator", and "sexual abuser of young girls." 413-424. Petitioner's objection was overruled by the trial court,

however, because defense counsel "characterized the prosecution witnesses in less than flattering terms," and described the prosecutor's comments as "rhetorical flare."[7] Tr. 422-23. The court, in its instruction, reminded the jury that "nothing the lawyers say in their summations is evidence" and "I am responsible for setting forth the law, not the lawyers." Tr. 389-90, 431.

The Court finds that the prosecutor's remarks were improper. See, e.g. United States v. Young, 470 U.S. 1, 7 n. 5 (1985) ("The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury"); United States v. Modica, 663 F.2d 1173, 1180 (2d Cir. 1981) ("It is fundamental to sound procedure in federal criminal prosecutions that counsel refrain from appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only be to arouse passion and prejudice"). The prosecutor's use of numerous epithets to bolster his summation was plainly intended to incite the jury. "It is not enough, however, that the prosecutor's remarks were improper; rather ... 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in

_____
[7] In opening arguments and in his final summation, petitioner's counsel urged the jury not to disregard the "aberrations in the behavior" of the victims, and repeatedly suggested that the prosecution urged the victims to testify or face penalties of their own. For example, in attacking the credibility of one witness, Mr. Bertram stated to the jury, "Does it seem to you that she had to make an allegation against him or else face the prospects of spending another year in the detention facility where she is? I mean–it comes down to this. Is it him or me, right? Either I go to jail for a year or he goes? Who would you choose? She's looking out for herself." Tr. 243, 398-99.

question fundamentally unfair.'" Meachum, 907 F.2d at 355 (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)). Similar remarks have been held not to warrant habeas relief where the comments are aberrant in an otherwise fair proceeding. See Stephens v. Superintendent, No. 04-CV-1443, 2008 WL 755278 (N.D.N.Y. March 19, 2008) ("A prosecutor's reference to a defendant as a "sexual predator" does not justify habeas relief where, as in the present case, the reference was an isolated, aberrant incident of prosecutorial misconduct in an otherwise fair proceeding.")(quotations omitted); Rasmussen v. Filion, No. 01-CV-6215P, 2005 WL 318816 (W.D.N.Y. Feb. 9, 2005) (Prosecutor's comment that petitioner was a "sexual predator" was plainly improper but did not justify habeas relief); see generally United States v. Elias, 285 F.3d 183, 191 (2d Cir. 2002) ("the severity of the misconduct is mitigated if the misconduct is an aberration in an otherwise fair proceeding").

Given the evidence produced at trial, it is likely that the jury would have convicted petitioner of statutory rape regardless of the prosecutor's challenged remarks. The jury rejected the testimony of one victim and credited the testimony of the others, ultimately finding him guilty of the charges relating to two of the three victims. "[I]f the proof of guilt is strong, then the prejudicial effect of the [prosecutor's] comments tends to be deemed insubstantial." Modica, 663 F.2d at 1181.

In light of the foregoing, the Court does not find that the prosecutor's remarks on summation had a substantial and injurious effect or influence in determining the jury's verdict. <u>Tankleff</u>, 135 F.3d at 252. Thus, this aspect of petitioner's second ground for relief is without merit.

### 3.    Improper Restriction of Cross-Examination

Petitioner's third claim for habeas relief alleges that the trial court improperly restricted his attorney's ability to cross-examine a witness about her mental health history. Pet ¶ 22(C), Mem. at 15-16. The Appellate Division rejected this claim, holding that,

> [The trial court] properly exercised its discretion in denying defendant's request for access to the complainants' counseling records. The court examined the counseling records in camera and determined that the possible impeachment value of the records with respect to the credibility of the complainants did not overcome the confidentiality rights of the complainants with respect to those records.

<u>Beard</u>, 1 A.D.3d at 1052-53.

"The Confrontation Clause of the Sixth Amendment, which applies to the states through the Fourteenth Amendment, guarantees the defendant in a criminal prosecution the right to confront the witnesses against him." <u>Henry v. Speckard</u>, 22 F.3d 1209, 1214 (2d Cir. 1994) (citing <u>Pointer v. Texas</u>, 380 U.S. 400 (1965)). However, trial court judges retain "wide latitude" insofar as the Confrontation Clause is concerned to impose "reasonable limits" on

cross-examination cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

When the defense intends to utilize the contents of a confidential report, a defendant is entitled to have the file reviewed to determine whether it contains any relevant information to the outcome of his trial.[8] Pennsylvania v. Ritchie, 480 U.S. 39 (1987). However, where the trial court withholds such a report, but defense counsel is still able to fully cross-examine all the prosecution witnesses, no Confrontation Clause violation has occurred. Id. at 53 ("The ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony."). District courts in this Circuit have held that the refusal to disclose psychiatric records to the

---

[8] Similarly, under New York law, the appropriate procedure "is for the court, after a showing of a reasonable likelihood that the records might contain material bearing on the reliability and accuracy of the witness's testimony, to order production of the records and to inspect them in camera." People v. Arnold, 177 A.D.2d 633, 635 (2d Dept. 1991), lv. denied, 79 N.Y.2d 853 (1992). Although psychiatric records are confidential, "they may be disclosed upon a finding that the interests of justice significantly outweigh the witness's need for confidentiality." Id. at 634.

defense after an in camera examination is within the discretion of the trial court. <u>Delio v. People of State of New York</u>, No. 02-CV-5258(JBW), 03-MISC-0066(JBW), 2003 WL 22956953 (E.D.N.Y. Oct. 21, 2003); <u>Lugo v. Edwards</u>, No. 97 Civ. 7789 DC., 1998 WL 601080 (S.D.N.Y. Sept. 9, 1998).

Here, the trial court examined the victim's confidential record and did not permit its use during cross-examination because, the court found, it was of "dubious relevance and probative value," and that nothing in the records related to the victim's credibility or ability to recall events. Tr. 219-220. The trial followed the proper procedure under New York and federal law by examining the psychiatric record in camera, and exercised its discretion not to allow cross-examination based on the psychiatric report. Moreover, the record indicates that counsel was able to thoroughly cross-examine the witness. Tr. 334-57. Petitioner's right to confrontation was not abridged, and therefore the Appellate Division's holding was not an unreasonable application of Supreme Court precedent.

**4. Selective Prosecution**

Finally, petitioner alleges that he was subject to selective prosecution because the "prosecutor had evidence to arrest others but failed to arrest, overlooking or minimizing their misconduct," and that he was arrested "because of his nationality." Pet. § 22(D). In his accompanying memorandum, petitioner directs the Court

to consider the issue raised as Point I in his appellate brief as support for this argument. Pet'r Mem. 17-18. The Court notes that Point I of petitioner's brief on appeal is a claim that the verdict was against the weight of the evidence.[9] Petitioner has not explained the nexus between the two claims, nor has he set forth any legal or factual basis for a claim of selective prosecution. Therefore, the Court shall presume that petitioner intended to argue that the verdict was against the weight of the evidence.

Unlike challenges to the sufficiency of the evidence, weight of the evidence claims are not cognizable on habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v.

---

[9] The Court notes that Point I of his *pro se* supplemental brief discusses the ineffective assistance of trial counsel, and concludes he intended to refer to Point I of appellate counsel's brief on direct appeal. See Ex. A, B.

McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Insofar as petitioner attempts to challenge the credibility of the witnesses that testified at trial, see Pet'r Mem. at 17-18, questions of witness credibility belong to the fact-finder, and the arguments petitioner made on direct appeal and here were already presented to, and resolved by the jury at his trial. Accord, e.g., Garrett v. Perlman, 438 F.Supp.2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's specific argument in support of this claim, that King's testimony was "incredible," is likewise not reviewable in habeas proceedings since credibility determinations are the province of the jury.") (citing Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal.")). Neither on direct appeal nor on federal habeas is a court reviewing a sufficiency of the evidence claim permitted to revisit the factfinder's determinations as to the witnesses' credibility and veracity. E.g., United States v. Strauss, 999 F.2d 692, 696 (2d Cir.1993) ("[T]he jury is exclusively responsible for determining a witness' credibility.") (citing United States v. Roman, 870 F.2d 65, 71 (2d Cir.), cert. denied, 490 U.S. 1109 (1989)); Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficient evidence claim raised by

habeas petitioner because jury was entitled to believe State's witnesses despite inconsistencies in their testimony and State's evidence). Petitioner's claim therefore does not state a basis for habeas relief.

## IV. Conclusion

For the reasons stated above, Nathaniel Beard's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    December 15, 2009
           Rochester, New York